UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KRAMER & FRANK, P.C., | ) | |
| | ) | |
| Plaintiff/ | ) | |
| Counterdefendant. | ) | |
| | ) | |
| v. | ) | Case No. 4:05CV2395 RWS |
| | ) | |
| KEVIN WIBBENMEYER, et al., | ) | |
| | ) | |
| Defendants/ | ) | |
| Counterclaimants. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before me on Kramer & Frank's Motion Dismiss Defendants' First Amended Counterclaim [#21]. The motion shall be granted, and Defendants' Amended Counterclaims shall be dismissed with prejudice.

### **BACKGROUND**

Kramer & Frank is a St. Louis law firm that represents MBNA, a credit card company, in debt collection matters. Kramer & Frank initiated this lawsuit seeking declaratory judgment pursuant to 28 U.S.C. § 2201 that its debt collection practices do not violate state or federal laws.

Kramer & Frank has represented MBNA in the collection of separate arbitration awards entered in favor of MBNA against Defendants arising from credit card agreements entered into between MBNA and Defendants. Those arbitration awards included awards for attorneys' fees. Subsequent to winning the arbitration awards, Kramer & Frank filed motions to confirm the awards as judgments against Defendants in various Missouri state courts. Some of the arbitration awards have been confirmed by the state courts.

Subsequent to arbitration, Defendants, by and through counsel, accused Kramer & Frank

of violating the Fair Debt Collection Practices Act and threatened to initiate litigation against Kramer & Frank. Kramer & Frank then initiated this suit.

Defendants filed their first Counterclaim on January 2, 2006. Kramer & Frank filed a motion to dismiss, or in the alternative, for a more definite statement with regard to the first Counterclaim on February 10, 2006. I granted the motion for a more definite statement on March 2, 2006, because the Counterclaim failed to meet the requirements of Rules 8, 9, or 10 of the Federal Rules of Civil Procedure.[1] In my Memorandum and Order, I ordered Defendants to file an Amended Counterclaim that complies with the Rules of Civil Procedure.

### DEFENDANTS' AMENDED COUNTERCLAIM

Defendants' Amended Counterclaim alleges that Kramer & Frank fraudulently assessed attorneys' fees against Defendants for two reasons. First, Defendants claim that Kramer & Frank fraudulently represented that the underlying credit agreements provided for attorneys' fees to be assessed to Defendants when they contained no such provisions. Second, Defendants claim that Kramer & Frank fraudulently represented that they could collect attorneys' fees when it knew that the collection of attorneys' fees that was prohibited by Missouri law because the attorneys who participated in the arbitrations were not licensed to practice in Missouri.

Defendants also allege that Kramer & Frank fraudulently misrepresented the amount of debt the Defendants owed to MBNA, misrepresented the applicable law, prevented Defendants from presenting defenses to a court of competent jurisdiction, and refused to allow Defendants to fully investigate the facts surrounding MBNA's claims.

Defendants allege that Kramer & Frank's actions violated the Fair Debt Collection

---

[1] Docket No. 11.

Practices Act, 15 U.S.C. § 1692, *et seq.*, RICO, 18 U.S.C. § 1961, *et seq.*, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, and the Truth in Lending Act, 15 U.S.C. § 1601, *et seq*.

**STANDARD**

In ruling on a motion to dismiss, I must accept as true all the factual allegations in a complaint and view them in the light most favorable to the non-moving party. Kohl v. Casson, 5 F.3d 1141, 1148 (8th Cir. 1993). Generally, a cause of action should not be dismissed for failure to state a claim unless, from the face of the complaint, it appears beyond a reasonable doubt that the Plaintiff can prove no set of facts in support of the claim that would entitle him to relief. Davis v. Hall, 992 F.2d 151, 152 (8th Cir. 1993).

Rule 9, however, provides for a heightened pleading standard when a party alleges fraud: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b).

> 'Circumstances' include such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby. Because one of the main purposes of the rule is to facilitate a defendant's ability to respond and to prepare a defense to charges of fraud, *conclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule*.

Commercial Property Investments, Inc. v. Quality Inns Intern., Inc., 61 F.3d 639, 644 (8th Cir. 1995) (emphasis added; internal citations and quotations omitted); Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-550 (8th Cir. 1997) (the circumstances constituting fraud include the "who, what, when, where, and how") (collecting cases).[2]

---

[2] Additionally, Defendants' RICO claims are subject to heightened pleading standards. E.g., Lally v. Crawford County Trust & Sav. Bank, 863 F.2d 612 613 (8th Cir. 1988) ("In

## ANALYSIS

Defendants' Amended Counterclaim contains a laundry list of allegations. Unfortunately, the allegations in the Amended Counterclaim are merely conclusory and do not identify the "who, what, when, where, and how" as required by Rule 9(b). For example, in paragraph 38 of the Amended Counterclaim,[3] Defendants allege:

> Kramer & Frank committed the following deceptive acts that pertain to the solicitation, maintenance, and enforcement of a consumer credit agreement:
>
> a. assessed attorney's fees against each respective Defendant for legal services provided a creditor by persons not licensed to practice where services were rendered;
>
> c. Kramer & Frank misrepresented to Defendants that the creditor's arbitration counsel was authorized to practice law in the state wherein the representation occurred or an arbitration hearing convened – in fact, arbitration counsel was not authorized;
>
> k. threatened to assess unauthorized charges against Defendants, thereby misrepresenting and deceiving the Defendants;
>
> l. assessing charges against Defendants that were specifically prohibited by applicable state law;
>
> n. submitted to Defendants a written document that falsely reported the charges that may be lawfully assessed against each Defendant;
>
> p. contacted Defendants by dunning letters and dunning phone calls, said contact seeking to collect

---

pleading RICO violations, a litigant must allege the time, place, and content of all false representations."). In this case, Defendants' RICO claims are indistinct from their fraud claims, so I will analyze each of the claims under Rule 9(b).

[3] Paragraph 38 follows the non-alphabetic order as is cited below.

- 4 -

    amounts that were unlawfully assessed;

  q.  filed motions and/or lawsuit papers seeking to enforce arbitration awards that contained false representations regarding the amounts Defendants owed a consumer creditor;

  r.  filed motions and/or lawsuit papers demanding that Defendants pay money(s) that Plaintiff was specifically proscribed from levying against Defendants.

These paragraphs do not identify the speaker of the allegedly fraudulent representations or to whom they were spoken. They also fail to allege where and when the allegedly fraudulent misrepresentations occurred. And although letters, motions, and lawsuits are alluded to, none of them are specifically identified. Nor are the drafters of the letters and/or motions identified.

These failures are not rectified in the enumerated Counts of the Amended Counterclaim. For example, in Count I, which is similar to each of the other Counts, Defendants allege:

  52.  Kramer & Frank violated Brandi Cheney's rights while acting on behalf of MBNA America Bank in <u>MBNA v. Cheney</u>, Randolph County Missouri Case No. 05 RA- CV00295.

  53.  In the scope and course of the collection of a consumer debt against Cheney, MBNA initiated an arbitration seeking to recover not only the amount of the consumer debt, but also attorney's fees incurred in the arbitration proceeding.

  54.  Even though the respective consumer credit agreement does NOT include a provision wherein debtors agree to pay the creditor's attorney's fees equal to a liquidated sum or a set percentage of the principal amount due, the respective creditor of the debtor/ Defendant (in the instant case, the creditor was MBNA America Bank, NA) Kramer & Frank misled and deceived Ms. Cheney by setting forth a sum-certain for attorney's fees.

  55.  Plaintiff Kramer & Frank threatened to assess-- and actually did assess-- attorney's fees against Ms. Cheney for the services

rendered to MBNA by persons who were not authorized to practice law where the arbitration occurred. Further, these acts of Kramer & Frank deceived and misrepresented to Ms. Cheney as to the character and amount of debt allegedly owed.

56. Because MBNA America Bank sold all rights inuring to MBNA America Bank under Ms. Cheney's consumer credit account to an entity wholly independent of MBNA America Bank, Ms. Cheney was no longer indebted to MBNA America Bank. This sale notwithstanding, Kramer & Frank purposefully, willfully, and deceptively concealed the true identity of the owner of rights under Ms. Cheney's account. After the sale of Ms. Cheney's account to this wholly independent entity was consummated, Kramer & Frank continued to deceive and mislead Ms. Cheney by falsely maintaining that Ms. Cheney was indebted to MBNA America Bank when in fact she was not. Additionally, Kramer & Frank sent Ms. Cheney a false and deceptive disclosure that deceptively withheld the identity of the real creditor from Ms. Cheney.

57. In the scope and course of the collection of consumer debt against Ms. Cheney, Kramer & Frank used deception, misrepresentation, and false pretense in connection with the sale on credit of objects, wares, goods, commodities, intangibles, services, household products, or consumer products. Specifically, Kramer & Frank falsely identified the following to Ms. Cheney the true amount of the indebtedness (by adding amounts specifically forbidden by law) and also falsely set forth true identity of Ms. Cheney's obligee.

58. In the scope and course of the collection or enforcement of a consumer debt or obligation against Ms. Cheney, Kramer & Frank used unfair practice including the concealment, suppression, or omission of material facts in connection with the sale, on credit, of merchandise in trade or commerce. The material facts concealed included the actual amount due and owing a creditor, the actual identity of the real party in interest, and the fact that the creditor was proscribed from assessing attorney's fees for the legal services of non-Missouri Bar members.

59. Kramer & Frank disseminated, published, or reported to Ms. Cheney and a third party a document that inaccurately and falsely reported the amount that Ms. Cheney owed on her MBNA America consumer credit account. Additionally, Kramer & Frank disseminated, published, or reported to Ms. Cheney and a third

party a document that falsely reported to whom Ms. Cheney was indebted, and further falsely reported the lawful amounts that Ms. Cheney was obligated to pay.

60. While acting in the scope and course of collecting a consumer debt from Ms. Cheney, Kramer & Frank was an active participant in the affairs and endeavors of an enterprise known as the National Attorney's Network, also known as the National Collection Attorney's Network. The Network uses the interstate sending of US mail, interstate facsimile transmissions, interstate telephone communications and wires to communicate among the members of the enterprise (including but not limited to Kramer & Frank) regarding a pattern of activity devised to knowingly deceive, mislead, intimidate, improperly take money from Ms. Cheney.

61. While acting in the scope and course of collecting a consumer debt from Ms. Cheney, Kramer & Frank attempted to take money from Ms. Cheney by a wrongful threat that Kramer & Frank sent Ms. Cheney under color of an official right.

62. While acting in the scope and course of collecting a consumer debt from Ms. Cheney, Kramer & Frank used artifice and deception to obtain funds, credits, or rights from Ms. Cheney that were inuring to the benefit of MBNA America Bank, a financial institution.

63. While acting in the scope and course of collecting a consumer debt from Ms. Cheney, Kramer & Frank used United States Mail, interstate telephone or wire connections and/or interstate facsimile transmissions to submit demands that Ms. Cheney pay money, said demands deceiving Ms. Cheney as to the amounts that could be legally collected by MBNA America National Bank.

64. At the time Kramer & Frank made fraudulent misrepresentations to Ms. Cheney, the enterprise and Kramer & Frank knew that the amounts demanded of Ms. Cheney was specifically proscribed by law. Alternatively, because Kramer & Frank are Missouri lawyers, they knew or should have known this proscription of Missouri law, yet demanded sums from Ms. Cheney that were specifically proscribed by law while acting in the scope and course of collecting a consumer debt from Ms. Cheney.

65. Ms. Cheney has suffered emotional distress, economic loss, noneconomic loss and hedonic damage by virtue of the acts of the

66. Plaintiff Kramer & Frank made representations to Defendants that Kramer & Frank knew were false and inaccurate. Specifically, Kramer & Frank disclosed to Ms. Cheney that MBNA was a real party in interest with regard to a consumer debt owed by Cheney, when in fact MBNA was not a real party in interest; further Kramer & Frank disclosed to Ms. Cheney that MBNA could assess against Cheney attorney fees for legal services rendered by non-Members of the Missouri bar, when in fact MBNA cannot; further, Kramer & Frank assessed against Ms. Cheney the attorney's fees of non-members of the Missouri bar, when in fact Kramer & Frank was prohibited by law from doing so. Ms. Cheney accepted these misrepresentations as true and reasonably relied on the representations of Kramer & Frank to be true, and sustained damages and economic loss thereby.

These allegations fail to name the who, what, when, where, and how that is required when pleading fraud. Parnes, 122 F.3d at 549-550. That is, they do not name any individual as having made the alleged fraudulent representations. They do not mention when or where the alleged representations were made. Nor do they name the alleged individuals who practiced law in Missouri without the proper licensure. As a result, the allegations do not meet the heightened pleading requirements and will be dismissed. Because I have already allowed Defendants the opportunity to replead their Counterclaim in compliance with Rule 9(b), I will dismiss the Amended Counterclaim with prejudice.

Because I am dismissing the Amended Counterclaim, Defendants' Motion to Certify Class and Motion for Reconsideration are moot and will be denied as such.

Accordingly,

**IT IS HEREBY ORDERED** that Kramer & Frank's Motion Dismiss Defendants' First Amended Counterclaim [#21] is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendants' First Amended Counterclaim is **DISMISSED with prejudice**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Certify Class [#17] is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendants' Motion for Reconsideration [#38] is **DENIED** as moot.

Dated this 26th Day of April, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE